(May 15, 1900.)

## NETHERLANDS AMERICAN MORTGAGE BANK v. CONNAWAY, RECEIVER.

[61 Pac. 590.]

TRUSTEE—MINGLING INDIVIDUAL MONEY WITH FUNDS OF BANK—LIABILITY OF BANK.—B., the president of a national bank, made a loan for his personal use, to be invested, as the lender understood, in a purely personal transaction of B. *Held,* that the fact that the money so borrowed by B. was, or might have been mingled

with the money of the bank, created no liability of the part of the bank as trustee.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

C. J. Orland, for Appellant.

We submit that under the law and the evidence, that the plaintiff is entitled to follow the $2,000 into the hands of the defendant, receiver, and that the same be decreed to belong to the plaintiff, and that it be paid in full, and that the following authorities support our claim: *Standard Oil Co. v. Hawkins,* 74 Fed. 395; *Frelinghuysen v. Nugent,* 36 Fed. 229; *Peters v. Bain,* 133 U. S. 670, 10 Sup. Ct. Rep. 354; *National Bank v. Insurance Co.,* 104 U. S. 54; *Columbian Bank's Estate,* 147 Pa. St. 422, 23 Atl. 625, 626, 628; *Freiberg v. Stoddard,* 161 Pa. St. 259, 28 Atl. 1111; *Sherwood v. State Bank,* 94 Mich. 78, 53 N. W. 923; *Englar v. Offut,* 70 Md. 78, 14 Am. St. Rep. 332, 16 Atl. 497; *Burnham v. Barth,* 89 Wis. 362, 62 N. W. 96; *Ferchen v. Arndt,* 26 Or. 121, 46 Am. St. Rep. 603, 37 Pac. 161; *State v. Thum,* 6 Idaho, 323, 55 Pac. 858. The Moscow National Bank not being an innocent purchaser, having suffered no loss, and having knowledge of the trust character of the money, cannot claim any rights therein as against the true owner, now seeking by this action to recover that only which is its own. (*Kitchen v. Bedford,* 13 Wall. 413; *Gilbert v. Sleeper,* 71 Cal. 293, 12 Pac. 172; *Cavagnaro v. Don,* 63 Cal. 227; 27 Am. & Eng. Ency. of Law, 252; *Independent Dist. v. King,* 80 Iowa, 497, 45 N. W. 908; *McLeod v. Evans,* 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214; *Peak v. Ellicot,* 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; *People v. Bank,* 96 N. Y. 33.)

R. T. and J. T. Morgan, for Respondent.

Where a trustee deposited trust funds in his private bank and commingled them with general funds of the bank, the trust creditor was not entitled to preference over other creditors on insolvency of the bank. (*Shute v. Hinman,* (decided March 20, 1899) 34 Or. 578, 56 Pac. 412, 58 Pac. 882; *Balbach v. Frelinghuysen,* 15 Fed. 675.) The taking of special deposits to keep

merely for the accommodation of the depositor is not within the authorized business of national banks, and the cashiers of such banks have no power to bind them on any express contract accompanying or any implied contract arising out of such taking. (*Wyley v. First Nat. Bank,* 47 Vt. 546, 19 Am. Rep. 122, 1 N. B. C. 905; *School Dist. v. The National Bank,* 102 Mass. 174; *Spokane Co. v. First Nat. Bank,* 68 Fed. 979.) In the case at bar, the Netherlands American Mortgage Bank being the owner of the funds, intrusted them to the care of Mr. S. Barghoorn, its agent. He deposited these funds in the Moscow National Bank to his individual credit. The bank is not in any manner whatever charged with this trust, but it is chargeable to Mr. Barghoorn individually. (*Cavin v. Gleason,* 105 N. Y. 256, 11 N. E. 504.)

HUSTON, C. J.—The facts in this case, briefly stated, are as follows: The appellant is a foreign corporation, having an agent at Moscow, Idaho. The business of the said corporation is the loaning of money upon first mortgages on real estate, and to this, it would seem, their agent was limited, so far as loans were concerned. The agent of the appellant, one Barghoorn, held the position of assistant, or *quasi* assistant, cashier of the Moscow Bank. One R. S. Browne was at the time the president of the Moscow National Bank. In fact, the inference from the evidence is that Browne was the National Bank of Moscow, if not *de jure,* at least *de facto.* The appellant had money on deposit with the Exchange National Bank of Spokane, Washington, against which their said agent, Barghoorn, was authorized to draw for loans upon real estate. It appears from the record that Browne was fully advised of the nature and extent of Barghoorn's authority in relation to the funds of appellant against which he was authorized to draw. On or about the 15th of January, 1897, it seems a payment was about to be made by the United States government to the Nez Perces Indians at Lapawai, Nez Perces county, and, as these payments were to be made in treasury drafts, there was a visible profit to be made in the purchase of the same from the Indians. Of course, such a transaction was outside of, and prohibited by the law governing, the operations of a national bank. But the astute and ubiquitous

Browne saw a margin of profit, at least for Browne, in the transaction; but there were not sufficient funds in the bank available for the project. He therefore approaches Barghoorn with the request that he (Barghoorn) should loan him (Browne) the sum of $2,000 of the funds of the appellant, which Browne at the time well knew Barghoorn could not do without being guilty of a breach of trust. But the hypnotic influence of Browne overcame any scruples of Barghoorn, and upon the understanding that he (Barghoorn) was to be repaid in a few days, either in money or "Indian drafts," Barghoorn wires to the Spokane bank for the sum of $2,000, and on its receipt turns it over to Browne. There is considerable evidence as to what disposition was made of the money after its receipt by Browne, but we do not think it cuts any figure in the case. The money was loaned by Barghoorn to Browne individually, and not to the Moscow National Bank. It was loaned for a purpose well known to Barghoorn at the time, and which he, as an officer of the bank, was presumed to know was without the legitimate and authorized business of the bank. Because the money was placed by Browne in any particular receptable of the bank, or because the bookkeeper in making up the cash of the bank included this sum in the aggregate of the funds of the bank, cannot alter the legal status of the parties. It is sought by this action to charge the Moscow National Bank, or its receiver, with this sum of money as a trust fund.

We are unable from the record to find anything in this transaction which tends to impress the loan from Barghoorn to Browne with the character of a trust in the bank. It was a simple loan from an individual to an individual, nothing more.

That Browne knew that Barghoorn was violating his trust in making the loan is no predicate for a charge against the bank; for Browne did not make the loan by or on behalf of the bank, but for his own personal profit. Had the money been loaned to Browne as president of the bank, for the use of the bank, or had it been deposited by Barghoorn as the agent of the appellant, under his known authority as such agent, a different case would be presented; but no such conclusion can be reached from the evidence. The mere fact that Browne put the money, which he

had borrowed as an individual, in the safe of the bank, and presumably drew therefrom its equivalent in gold, to be used in a personal transaction of his own, could not make the bank responsible as a trustee. If the bank were to be held responsible for all the illegitimate, not to say unlawful, transactions of its officers, clearly outside of, and disconnected with, their official duties or responsibilities, the business of banking would be handicapped with most fearful responsibilities. The bank in this case derived no benefit from the loan from Barghoorn to Browne. It was no party to the loan. It could no more be held liable to Barghoorn, according to the evidence in the record, than if Browne had picked his (Barghoorn's) pocket of this amount.

We have examined the authorities cited by the appellant, but we find no case where the conditions were at all similar to the case at bar. The trouble with appellant's position and argument is that it assumes the existence of a state of facts not disclosed by the record, and ignores the primary and controlling fact in the case, to wit, that the loan from Barghoorn to Browne was purely a personal transaction, with which the bank had nothing to do, to which it was not privy, and for which it could no more be held responsible than it could for a larceny or any other criminality of Browne, and this condition could not be changed by any of the acts of the employees of the bank. We think the findings of the district court are fully sustained by the evidence. The judgment of the district court is affirmed, with costs to respondent.

Sullivan, J., concurs.

Quarles, J., did not sit at the hearing of this case, and took no part in the decision thereof.

ON REHEARING.

(June 26, 1900.)

Per CURIAM.—The facts in this case are undisputed. They were succinctly set forth in the opinion filed herein. To repeat them would be an act of supererogation. Simply stated, the

facts as they appear in the record are these: One R. S. Browne, being at the time president of the Moscow National Bank, entered into an agreement with Barghoorn, who was the agent of the appellant, by which they were together to realize a profit out of a speculation in Indian drafts; that is, drafts paid by the government to the Nez Perces Indians upon a purchase of Indian lands. This was as set forth in appellant's findings of fact No. 9, submitted to the court, and by the court refused, and which is as follows: "9. That Barghoorn and R. S. Browne had agreed together to use the said money of the plaintiff for the purpose of purchasing Indian drafts, which they had no authority to do, and did misapply the funds of the plaintiff to further their own business or profit, and were wrongfully diverting said money from the purposes for which it was intrusted to said Barghoorn by the appellant." Accepting this statement of fact as fully supported by the evidence, which we think it is, upon what principle can the appellant claim a right of recovery from the bank? While it is clear from the evidence that the actual money received by Browne from Barghoorn was, by mistake of the clerk or bookkeeper, placed in the general funds of the bank, it is equally clear that its equivalent was drawn from the funds of the bank by Browne, and used by him in the joint speculation of himself and Barghoorn, and the bank received no consideration whatever therefor or therefrom. That Browne and Barghoorn, by their unlawful and unauthorized act (to use a very mild term to designate their actions), can impose a trust upon the bank is a proposition we are unable to recognize. Petition for rehearing denied.